UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MARCONI,<br><br>                    Plaintiff,<br><br>- v. -<br><br>FIRST QUALITY PROPERTIES I, LLC,<br>FIRST QUALITY ENTERPRISES, INC.,<br>HALEH DAMAGHI, and<br>KAMBIZ DAMAGHI,<br><br>                    Defendants. | Case No.<br>13-cv-05367 (LDW) (ARL)<br><br><br>HON. LEONARD D. WEXLER |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................... 2

II.  ARGUMENT .......................................................................................................... 3

    A.  Judge Lindsay Has Already Ruled That the "Prudential Matters" and "Post-Termination Medical Records" are Relevant. ................................... 3

        1.  Law of the Case ................................................................................ 3

        2.  The Jury Must Hear That Plaintiff Received $1 Million to Avoid A Manifest Injustice and Misrepresentation of Facts to The Tribunal ........... 4

        3.  The Court Should Reconsider Production of the Prudential Settlement Given Changed Circumstances. ............................................... 6

        4.  The Prudential Matters are not subject to exclusion under FRE 403 ................................................................................................... 8

    B.  Whether Plaintiff's Application for LTD Benefits Judicially Estops Plaintiff's Disability Discrimination Claims Is A Threshold Issue Already Fully Briefed and Present Before this Court. ........................................... 10

    C.  The Post-Termination Medical Records Are Relevant To Prove Whether or not Plaintiff, With or Without Accommodations, Could Have Performed The Essential Functions of His Job and/or Whether His Disability Could Have Been Reasonably Accommodated. .................................. 11

    D.  Plaintiff's Request For An Order Precluding Evidence Concerning Plaintiff's Prior Litigation At Trial Should Be Denied As Moot. ..................... 15

    E.  Plaintiff Has Not Made The Relevant Showings Under Rule 611(c)(2) To Allow For A Finding That Certain Individuals Should Be Treated As Hostile Witnesses. ................................................................................. 16

III. CONCLUSION ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alford v. Turbine Airfoil Coating & Repair, LLC*, 2014 U.S. Dist. LEXIS 53692 (S.D.N.Y. 2014) ...................................................................................................................12

*Aramony v. United Way of America*, 254 F.3d 403, 410 (2d Cir. 2001) ..........................................6

*Chisholm v. Mem'l Sloan-Kettering*, 2011 U.S. Dist. LEXIS 53243, at *6-7 (S.D.N.Y. May 13, 2011) ..............................................................................................................14, 9

*Clalit Health Servs. v. Isr. Humanitarian Found.*, 385 F. Supp. 2d 392, 398 n.8 (S.D.N.Y. 2005) .....................................................................................................................7

*Colonial Tanning Corp. v. Home Indem. Co.*, 780 F. Supp. 906, 911-12 (N.D.N.Y. 1991) ...........7

*DiLaura v. Power Authority*, 982 F.2d 73, 76-77 (2d Cir. 1992) ......................................................7

*DiSanto v. McGraw-Hill, Inc.*, 220 F.3d 61, 63 (2d Cir. 2000).......................................................12

*King v. Town of Wallkill*, 302 F. Supp. 2d 279, 290 (S.D.N.Y 2004) ............................................11

*McBride v. BIC Consumer Prods. Mfg. Co.* .................................................................................13

583 F.3d 92, 100 (2d Cir. 2009).....................................................................................................13

*Marconi v. Flowers, et al.*, Index. No. 71065/2012 (Sup. Ct., Westchester County)....................14

*Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 3-4 (2d Cir. 1999) ................................12

*Noll v. IBM*, 2015 U.S. App. LEXIS 8375, at *17 (2d Cir. May 21, 2015) ..................................13

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417, 424 (S.D.N.Y. 2010) ..........................................................................................................6

*Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004) ...................................15

*Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990)....................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 32(a)(8).............................................................................................................14

FRE 403 ..................................................................................................................................7, 9, 15

Rule 611(c)(2)..............................................................................................................................2, 15

I.     INTRODUCTION

Defendants First Quality Properties I, LLC, First Quality Enterprises, Inc., Haleh Damaghi, and Kambiz Damaghi (collectively "Defendants") submit this Memorandum of Law in Opposition to Plaintiff's Motions *In Limine* ("Pl. Br." [ECF No. 69]).  After recognizing that the key evidence relied upon by Defendants in support of their pending Motion for Summary Judgment is fatal to his case, Plaintiff asks this Court for an order excluding it all from trial.  He tries to do this by misrepresenting Judge Lindsay's rulings, misleading the Court about supposedly "undisputed" facts, and making arguments without legal support.  He conceals from this Court that Judge Lindsay has already ruled as to the relevancy of these materials and decided it would be "manifest injustice" to keep Defendants from using these documents to the instant dispute because the "information sought [from Prudential was] clearly relevant to Plaintiff's claimed ability to perform his job with reasonable accommodation as well as to Defendants' judicial estoppel defense."  (ECF No. 48).

In short, Plaintiff's Motions *in Limine* are nothing more than a last-minute effort by him to keep secret from the Jury the fact that he made numerous inconsistent and irreconcilable statements to an insurance carrier—Prudential—in the course of vigorously pursuing claims for Long-Term Disability ("LTD") and Catastrophic benefits, Life Insurance premiums, and other similar benefits.  These submissions, and most importantly, Prudential's determination that, ***even with job modifications***, Plaintiff could not perform the material duties of an Estate Manager anywhere since his injury judicially estop him from claiming the exact opposite in this litigation.  Alternatively, and irrespective of the applicability of Judicial Estoppel, the Prudential submissions along with his pre- and post-termination medical records are also highly probative of whether or not Plaintiff can prove—as he must—that, with accommodations, he could have performed the essential functions of his job and/or that his disability could have been reasonably

accommodated. As for Plaintiff's request to treat certain persons as "hostile" witnesses, Defendants object because Plaintiff has failed to make the requisite factual showings under Rule 611(c)(2).

## II. ARGUMENT

### A. Judge Lindsay Has Already Ruled That the "Prudential Matters" and "Post-Termination Medical Records" are Relevant.

1. Law of the Case

The "Prudential Matters" Plaintiff is attempting to exclude is comprised of over 1,500 pages of materials constituting Prudential's "claim file," and contains critical information of utmost importance to Defendants' defenses. They encompass many, if not all, of the Post-Termination Medical Records he also seeks to exclude, as well as a number of correspondence and submissions full of crucial admissions that Defendants intend on presenting in support of their defenses. Namely, these documents establish that (1) Plaintiff was not a "qualified individual with a disability" because he was unable to perform the essential functions of his job with or without a reasonable accommodation at all relevant times; and (2) that engaging in an interactive process was, and would have continue to have been, futile given the severity and length of Plaintiff's injury and total inability to work. Plaintiff concedes both of these matters are "facts of consequence" to his disability claims. (*See* Pl. Br. [ECF No. 69] at pp. 14-15). These Prudential Matters also conclusively establish that Plaintiff is precluded as a matter of law from arguing that he could have worked for Defendants at all relevant times under the doctrine of Judicial Estoppel—a matter that has been fully-briefed and is currently pending before Your Honor by way of Defendant's Motion for Summary Judgment.

But, more importantly, the Court needs to look no further than Judge Lindsay's March 30, 2015 decision, (ECF No. 48), in order to decide the parties' dispute with respect to the

relevancy of the "Prudential Matters" and "Post-Termination Medical Records." Judge Lindsay has already ruled that it would be "***manifest injustice***" to prevent Defendants from obtaining discovery from Prudential because the "information sought is ***clearly relevant*** to Plaintiff's claimed ability to perform his job with reasonable accommodation ***as well as*** to Defendants' judicial estoppel defense." (*Id.*) (emphasis added).[1]

Plaintiff has spent a significant portion of his brief arguing that the law of the case doctrine applies to decisions previously made by Judge Lindsay. He conveniently cherry-picks portions of those Orders and claims that those rulings bind this Court. (Pl. Br. [ECF No. 69] at pp. 4-6, 8-9). Defendants agree with the elements and application of the doctrine as briefed by Plaintiff and, for those reasons, submit there is no need to revisit Judge Lindsay's finding that the Prudential Matters are "***clearly relevant** to Plaintiff's claimed ability to perform his job with reasonable accommodation **as well as** to Defendants' judicial estoppel defense.*" (ECF No. 48) (emphasis added). Instead, the Court should, as Plaintiff argues, "adhere to its own [previous] decisions" and deny Plaintiff's application to exclude the presentation of the Prudential materials at trial.

    2.    The Jury Must Hear That Plaintiff Received $1 Million to Avoid A Manifest Injustice and Misrepresentation of Facts to The Tribunal

It is undisputed that Plaintiff received $1 Million Dollars from Prudential pursuant to the terms of a settlement agreement, which occurred in the Spring of 2014. It is further undisputed that Plaintiff failed to disclose his receipt of this amount while giving sworn testimony in October 2014 during a Workers' Compensation proceeding in connection with Plaintiff's injuries

---

[1] Defendants acknowledge that Judge Lindsay originally granted Plaintiff's motion to quash Defendants' Subpoena aimed at getting copies of the "Prudential Matters" on relevance grounds. (ECF No. 43). However, Defendants moved for reconsideration and, on March 30, 2015, Judge Lindsay vacated that portion of her previous Order and denied Plaintiff's motion to quash the Prudential Subpoena. (ECF No. 48).

which are the subject of this lawsuit, when asked how he was supporting himself. (Def. Ex. EM, at p.32 [DEF 2097]).   It is also undisputed that Plaintiff will tender two experts, a vocational expert and a damages expert, neither of whom incorporate in any way Plaintiff's receipt of this $1 Million Dollars into the assumptions leading to their opinions.  The fact that Plaintiff received such a large lump sum is a fact of consequence.  Allowing a now Millionaire Plaintiff to hide behind a confidentiality clause so that he can continue to falsely testify about his damages and means of support should not be permitted.  Further, handicapping Defendants' ability to cross-examine Plaintiff's supposed "expert testimony" by exposing the fact that their "opinions" fail to account for this windfall threatens manifest injustice and invites a misrepresentation of fact to this tribunal.

In essence, Plaintiff asks the Court to sit idle while allowing the Plaintiff to avoid explaining why he failed to testify under oath about his receipt of $1 Million Dollars when asked about his sources of income during sworn Workers' Compensation testimony.  Plaintiff further asks the court to sit idle when experts, cloaked with impressive professional and educational qualifications, give opinions concerning Plaintiff's ability to work and his alleged economic damages, knowing that Plaintiff received a material economic windfall yet failing to incorporate it into their opinions.  Plaintiff hopes that these experts, who themselves may not know Plaintiff received $1 Million Dollars as a settlement, can offer these opinions without even acknowledging how a lump sum receipt of such a large amount of money (which may potentially even be tax-free) might impact a person's desire to get out of bed in the morning to go to work, make a 80 minute commute each way as Plaintiff had to do, and/or how it might affect a person's decision as to when to retire.

Defendants will offer an expert who will testify that, as a matter of common sense and basic economic principles, a $1 Million dollar lump sum award has an undeniable impact on someone's motivation to continue participating in the workforce and, contrary to what is contained in Plaintiff's expert reports, is relevant to damages. Such a large payout directly bears on someone's willingness and ability to find and do work. This large settlement is also crucial to an examination of Plaintiff's mitigation of damages and the reasonableness of his post-termination job search. To conceal this information from the Jury would deprive them of the ability to truly assess the nature of Plaintiff's credibility, true ability to work, and his actual damages.

### 3. The Court Should Reconsider Production of the Prudential Settlement Given Changed Circumstances.

Plaintiff's motion also seeks to prevent Defendants from mentioning his settlement agreement with Prudential for $1 Million Dollars, reached as a result of his claim for additional benefits after being awarded retroactive and future LTD benefits. Plaintiff argues this information is irrelevant, unduly prejudicial, and barred by Judge Lindsay's earlier rulings. Defendants disagree and urge this Court to reconsider Judge Lindsay's ruling pursuant to the "changed circumstances" exception to the discretionary law of the case doctrine.

It is undisputed that Judge Lindsay previously restricted Defendants from questioning Plaintiff about his "settlement agreement and/or contractual arrangement[s]" with Prudential because "the terms of these settlement agreements are irrelevant to Plaintiff's claims." (ECF No. 40). But this ruling should be revisited because, unlike the case earlier, the Prudential settlement has been placed by Plaintiff "at issue" and is being used offensively to defeat Defendants' Judicial Estoppel arguments. Plaintiff has made his settlement agreement the centerpiece of his defense to Defendants' Judicial Estoppel argument (*See* Pl. Br. [ECF No. 69] at p. 10) (arguing

judicial estoppel is not implicated because the Prudential matter was resolved by settlement); *see also* Defendant's Reply Brief in Support of Summary Judgment [ECF No. 65], pp. 3-6). He also intends to present expert testimony relative to Plaintiff's damages and vocational abilities which appears to not account for the $1 Million Dollars Plaintiff was paid in connection with the same injury that forms the basis for his instant disability claims.

The Law of the Case doctrine requires that a court "[adhere] 'to its own decision at an earlier stage of the litigation' unless there are 'cogent' or 'compelling' reasons not to, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990) (citation omitted); *see also* Pl. Br. [ECF No. 69] at 5 (conceding there are exceptions to the doctrine). In addition to the three factors listed in *Sanders*, "[a]pplication of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to judgment." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417, 424 (S.D.N.Y. 2010) (*citing Aramony v. United Way of America*, 254 F.3d 403, 410 (2d Cir. 2001)).

Here, as noted above, "cogent" and "compelling" circumstances exist to reassess whether wholesale exclusion of the Prudential settlement agreement and its terms is still warranted. At the time she rendered her decision, Judge Lindsay did not have the benefit of what would be disclosed by Prudential, how Plaintiff would oppose summary judgment, and/or what information Plaintiff's economic and vocational "experts" would rely upon in coming to their conclusions. Given the prominence Plaintiff has given his settlement agreement and the nature of what he intends to claim relative to his damages, Defendants should be permitted to develop testimony concerning these matters.

The availability of this new evidence and now offensive use of the Prudential settlement by Plaintiff make the agreement and its terms fair grounds at trial and compels a reconsideration of Judge Lindsay's previous ruling. *See DiLaura v. Power Authority*, 982 F.2d 73, 76-77 (2d Cir. 1992) (findings made by a court for the purpose of injunctive relief are not the law of the case for subsequent litigation on the merits); *Clalit Health Servs. v. Isr. Humanitarian Found.*, 385 F. Supp. 2d 392, 398 n.8 (S.D.N.Y. 2005) (pre-discovery determination on a motion to dismiss not the law of the case for purposes of summary judgment); *Colonial Tanning Corp. v. Home Indem. Co.*, 780 F. Supp. 906, 911-12, (N.D.N.Y. 1991) (prior ruling in context of a discovery dispute did not establish law of the case with respect to unrelated issues which court had merely assumed for purposes of addressing the disputes, but which were not critical for resolution of the dispute). Thus, Plaintiff's application to exclude this relevant information should be denied.

4. <u>The Prudential Matters are not subject to exclusion under FRE 403.</u>

In an ill-conceived attempt to argue, without adequate legal support, that introduction of the Prudential materials at trial would confuse and mislead the Jury, Plaintiff inadvertently concedes their highly-probative value and establishes exactly why Plaintiff is judicially estopped[2] from establishing a *prima facie* disability discrimination claim. Plaintiff argues that allowing Prudential records to come in is inappropriately misleading because Prudential's adjudication of Plaintiff's LTD benefits application "provided no opportunity for Plaintiff to explain whether he could perform his job duties *with a reasonable accommodation*." ***This is simply not true.*** (*See* ECF No. 54-34 at DEF 6804). As explained in detail in Defendants'

---

[2] Defendants have moved for Summary Judgment on this basis. The entirety of their Reply Brief filed in support of their Motion for Summary Judgment is dedicated to this argument. (ECF No. 69).

-8-

Reply Brief filed in support of Summary Judgment, (Def. Reply Br. [ECF No. 65] at pp. 5-9), Prudential's LTD benefits eligibility requirements required Plaintiff to prove with corroborating medical evidence that he was "*unable to perform the material and substantial duties normally required for the performance of [his] regular occupation; and [that those duties]* ***cannot be reasonably omitted or modified*** *due to [his] sickness or injury.*" (ECF No. 54-34 at DEF 6804 ["Material and substantial duties"]) (emphasis added). Thus, contrary to Plaintiff's false assertions, his ability to work as an Estate Manager *with a reasonable accommodation* since his injury on December 13, 2011 was considered by Prudential in connection with its decision to award him retroactive LTD benefits. His "vastly different standards" argument is demonstratively false.

Plaintiff's second argument also conclusively proves why Defendants are entitled to Summary Judgment as a matter of law. Plaintiff concedes that "[a] reasonable juror could not readily differentiate between Prudential's policies underlying their benefits determinations and the law governing the claims in this case." (Pl. Br. [ECF No. 69] at p 17). ***Defendants could not agree more.*** *See* Def. Reply Br. [ECF No. 65] at pp. 5-9). This is exactly why Plaintiff's success at getting benefits from Prudential necessarily bars him from meeting a *prima facie* disability discrimination claim here.

Apparently, not even Plaintiff denies that Prudential's LTD benefits eligibility requirements and the law governing the claims in this case are practical equivalents, mutually exclusive, and present a direct and irreconcilable contradiction for Plaintiff. *See id.* Defendants agree with Plaintiff in that no reasonable person could understand how an individual could get LTD benefits by showing that he has been rendered "unable to perform the material and substantial duties" of his estate manager job anywhere and that no reasonable "omissions or

-9-

modifications" concerning those duties could be made due to his injury while also asserting (as Plaintiff attempts to do now) that he could "with a reasonable accommodation" have performed the "essential functions" of an estate manager *during the same period of time*. It is not the contents of the Prudential Matters that risks confusing a Jury, it is Plaintiff's insistence in speaking out of both sides of his mouth. Accordingly, his attempt to keep the Prudential Matters out on this basis should be denied as well.[3]

> **B. Whether Plaintiff's Application for LTD Benefits Judicially Estops Plaintiff's Disability Discrimination Claims Is A Threshold Issue Already Fully Briefed and Present Before this Court.**

Plaintiff has asked the Court to rule *in limine* on an issue already fully-briefed and awaiting a decision from the Court. (Pl. Br. [ECF No. 69] at p. 8-13). Defendants have already moved for Summary Judgment on this basis and argued that Prudential's January 2014 determination of Plaintiff' LTD Benefits application, including various submissions and admissions made in connection with the same, makes it impossible for Plaintiff to satisfy the elements of his disability discrimination claims. (*See* Def. SJ Br. [ECF No. 52] at pp. 20-22; Def. Reply Br. [ECF No. 65]). Defendants submit that Plaintiff is judicially estopped from showing that, with an accommodation, he could have performed the essential functions of his job as an Estate Manager as of January 24, 2012. This is because he represented to Prudential the opposite and received over $77,000 in retroactive LTD Benefits (as well as a $7,500/month award going forward) as a result. (ECF Nos. 54-34, 54-43). He also later received a reported $1

---

[3] Defendants note that Plaintiff does not cite any cases for the proposition that documents of this nature should be excluded under a Rule 403. The single district court opinion he cites as legal support merely involves the exclusion of an EEOC Determination and related materials from trial for vastly different reasons. In *Chisholm*, the Plaintiff successfully convinced the court to exclude these materials because, among other things, it addressed claims that were not before the Jury and risked confusion as the standard applied by the EEOC differed from the burden of proof applicable to the retaliation claims being tried. None of those considerations are relevant here.

Million Dollars by way of a settlement associated with his pursuit of catastrophic and other applicable Prudential benefit plans provisions because of the severity and debilitating nature of his physical condition. (*See* ECF Nos. 54-36 to 54-41).

Defendants devoted the entirety of Defendants' Reply Brief in support of their Motion for Summary Judgment to the applicability of the Judicial Estoppel doctrine in this case. (ECF No. 65). Plaintiff's arguments *in limine* are nothing more than a repetition of the arguments he made in opposition to Summary Judgment (*See* Pl. Opp. Br. [ECF No. 64] at pp. 17-20.) Accordingly, rather than copying and reasserting their arguments concerning Judicial Estoppel here, Defendants incorporate their arguments by reference (along with the factual support for the same) as set forth in their Summary Judgment papers, (ECF Nos. 52 at pp. 20-22; Def. SJ Reply Br. [ECF No. 65]), and urge the Court once again to grant Summary Judgment in their favor on this basis.

### C. The Post-Termination Medical Records Are Relevant To Prove Whether or not Plaintiff, With or Without Accommodations, Could Have Performed The Essential Functions of His Job and/or Whether His Disability Could Have Been Reasonably Accommodated.

Plaintiff incorrectly argues, again without adequate legal support, that all Post-Termination Medical Records should be excluded from trial. His argument fails because it is grounded on the false assumption that Plaintiff's physical condition after his discharge bears no significance on Plaintiff's inability to return to work or Defendants' obligation to accommodate his alleged disability.[4]

---

[4] Defendants have already explained above that many or all of these documents are also "Prudential Matters," which have been found by Judge Lindsay to be "*clearly relevant to Plaintiff's claimed ability to perform his job with reasonable accommodation as well as to Defendants' judicial estoppel defense.*" See pp. 3-4, *supra*.

First, Plaintiff conveniently used these same medical records in support of his claim for LTD and other benefits from Prudential. He used these materials to prove the **continuity**[5] and **degree** of Plaintiff's debilitating medical condition **since his injury in December 2011**.[6] But although he used these documents to successfully represent and support his claims that he *could not work as an Estate Manager anywhere in the world* since his injury when it benefited him, he now attempts to prevent Defendants from using the identical documents to prove the exact same point to the Jury.

Plaintiff's "relevance" arguments are unsupported by case law. Although he boldly argues that these records are "logically unrelated" to the claims and defenses in this case because they occurred after his termination, he cites no cases in support of this contention.[7] (Pl. Br. [ECF No. 69] at p. 19). His reliance on *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 290 (S.D.N.Y 2004), is misguided in that the court there did not conclude that after-the-fact medical records

---

[5] The Prudential Matters contain relevant medical information along a continuum starting with the date of injury through completion of Plaintiff's LTD claim. The fact that these records were "submitted" to Prudential at a later date is irrelevant to any analysis of admissibility.

[6] Although Plaintiff received retroactive LTD Benefits only from June 11, 2012 until the time he settled other claims with Prudential on or about the Spring of 2014, Prudential's LTD Plan required Plaintiff to also prove he had been unable to perform the material and substantial duties of his job for the entirety of the 6-month "elimination period" **immediately preceding June 11, 2012** (*i.e.*, since December 13, 2011). (ECF No. 54-34 at DEF 6801, 6805). Plaintiff successfully convinced Prudential to adopt his position that he had been "continuously disabled from performing the material and substantial duties of his regular occupation through the entire elimination period." *Id.* Thus, he admits being "disabled" as that term is defined by the Prudential plan from December 13, 2011 (injury date) through at least the Spring/Summer of 2014 (settlement date).

[7] The duplicitous nature of this argument is really striking. Although Plaintiff argues that *post-termination* medical records are irrelevant to prove Plaintiff's ability to work prior to his discharge, he lists Dr. Jones' Independent Medical Examination report—a medical examination performed *post-termination*—as part of his trial exhibits and presumably plans to introduce this *post-termination* medical document to show Plaintiff was capable of working *pre-termination*. (*See* Joint Pretrial Exhibit 18).

were irrelevant, but, rather, that the lack of contemporaneous records had allowed Plaintiff to establish an issue of fact requiring adjudication by a jury, and not as a matter of law. This ruling actually supports Defendants' position that these records are materials a Jury should consider in determining Plaintiff's inability to work with or without accommodations.

At least three additional decisions support the use of post-termination medical documentation in determining whether or not a plaintiff is a qualified individual for the purposes of a disability discrimination claim. *See DiSanto v. McGraw-Hill, Inc.*, 220 F.3d 61, 63 (2d Cir. 2000); *Alford v. Turbine Airfoil Coating & Repair, LLC*, 2014 U.S. Dist. LEXIS 53692 (S.D.N.Y. 2014); *see also Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 3-4 (2d Cir. 1999) (judicial estoppel context). These decisions show that post-termination statements and evidence of an employee's disability post-termination can be admissible if, just like the Prudential Matters and challenged medical records, they somehow relate back to a relevant period of time or legal issue. These cases are similar to the case at hand in that the post-termination medical records spoke to Plaintiff's condition and inability to work at or prior to the time of his discharge. *See id*. Therefore, the Post-Termination Medical Records should not be suppressed simply by virtue of the fact that they occurred after Plaintiff's termination. This fact alone by no means makes them "irrelevant."

Contrary to Plaintiff's blatant misrepresentation of the doctors' collective testimony, it is patently not true that Plaintiff's treating physicians failed to account for his job duties each and every time they deemed him incapable of returning to work (any job), even with restrictions/accommodations. (*See, e.g.*, Dr. Sharma Dep. [ECF No. 54-17] at p. 9; Dr. Barrik Dep. [ECF No. 54-15] at 37:15 to 38:12). Rather, every "Doctor's Progress Report" Plaintiff's treating physicians completed before and after his termination explicitly queried them as to the

possibility of allowing Plaintiff to return to work and whether he was capable of continuing to work in some capacity with limitations/accommodations. (*See, e.g.,* ECF No. 54-16 at Section F "Return to Work" [DEF 2803]). Notably, each and every treating orthopedic and pain specialist, including two spine surgeons, never released Plaintiff to return to work, and that determination continues to this day.[8] (*See* Def. SJ Br. [ECF No. 52] at pp. 7-11). If proven, the length and extent of Plaintiff's condition is undeniably relevant as to whether, and in what capacity, and for how long Plaintiff would have been able to continue working for Defendants but for their allegedly discriminatory actions—an element relevant not only to liability but also damages.

Finally, Plaintiff's pursuit of failure-to-accommodate disability claims against Defendants give these challenged medical documents heightened significance. Under the Second Circuit's *McBride v. BIC Consumer Prods. Mfg. Co.* decision, Defendants' alleged failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that an accommodation was possible. 583 F.3d 92, 100 (2d Cir. 2009) ("The employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible.") As Plaintiff concedes and the Second Circuit has explained, "the ADA imposes liability for . . . discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible." *Id.* at 100; *Noll v. IBM*, 2015 U.S. App. LEXIS 8375, at *17 (2d Cir. May 21, 2015); (Pl. Opp. Br. [ECF No. 64] at p. 16 n.9).

---

[8] Dr. Krosser's evaluation of Plaintiff on March 11, 2015 confirms that approximately three-and-a-half years after his 2011 workplace injury, Mr. Marconi is "still not getting better" and remains "totally disabled" and unable to work. (ECF Nos. 54-26; 54-23 at pp. 39-40).

Given the above, at a minimum, Defendants should be allowed to present evidence, using these Post-Termination Medical Records, to show that engaging in a more robust interactive process here would have been futile and, thus, no liability flows from their alleged inaction. These records conclusively establish that no accommodation was possible. These medical reports and opinions establish that no reasonable accommodation would have allowed Plaintiff to continue working as an Estate Manager for Defendants, even to this day.[9] Their relevance and, indeed, paramount importance to Defendants' defense is manifest.

### D. Plaintiff's Request For An Order Precluding Evidence Concerning Plaintiff's Prior Litigation At Trial Should Be Denied As Moot.

For unexplained reasons, Plaintiff did not bother to ask Defendants for their position on any of the items in his motion prior to moving for relief *in limine*. Had he done so, he would have learned that Defendants have no intention of introducing Plaintiff's prior litigations and/or threatened claims against his two other prior employers[10] as part of their case-in-chief. As such, there is no need for an Order to this effect. Defendants, however, reserve their right to confront Plaintiff with admissions and inconsistent statements made under oath in other litigations for purposes of impeachment. *See* Fed. R. Civ. Proc. 32(a)(8) ("A deposition previously taken may also be used as allowed by the Federal Rules of Evidence."); *see also Chisholm v. Mem'l Sloan-*

---

[9] See footnote 8, *supra*.

[10] What Plaintiff is referring to is the lawsuits he brought against owners of estates he previously managed and threats of legal action against them. Specifically, in *Marconi v. Flowers, et al.*, Index. No. 71065/2012 (Sup. Ct., Westchester County), Plaintiff alleged that estate principals created a sexually hostile work environment, constructively discharged him, and retaliated against him for rebuffing sexual advances. In a separate personal injury lawsuit brought against entities controlled by a former employer, Plaintiff alleged that an icicle fell and hit him in the head in 2009 and that the extent of his injuries were so devastating and severe that they prevented him (and continue to prevent him to this day) from working as an Estate Manager. In the course of that litigation he testified about needing to resign under suspect circumstances from another employer because he accused them of transporting drugs on a family plane. Though he only worked for that other estate for three to four months, he acknowledged they paid him for a year. All those other lawsuits have now been dismissed.

*Kettering*, 2011 U.S. Dist. LEXIS 53243, at *6-7 (S.D.N.Y. May 13, 2011) (excluding EEOC Charge and Rebuttal under Rule 403 but permitting opposing party to use it to impeach).

### E. Plaintiff Has Not Made The Relevant Showings Under Rule 611(c)(2) To Allow For A Finding That Certain Individuals Should Be Treated As Hostile Witnesses.

Plaintiff asks this Court to declare non-party witnesses Ms. Robey, Ms. Rambally, Mr. Ste. Marthe, Ms. Asani, and Mr. Shemtov hostile witnesses. (Pl. Br. [ECF No. 69] at 21-22). Federal Rule of Civil Procedure 611(c)(2) permits leading questions of hostile witnesses. Defendants recognize that designation of witnesses as hostile is a matter of considerable discretion for the Court. *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004). But, here, Plaintiff has not made a showing that these individuals "show a clear bias" warranting a hostile designation. In fact, Plaintiff offers nothing more than conjecture and his counsel's own subjective feelings in support of their argument. For example, it is unclear on what basis, having chosen not to depose her during discovery, Plaintiff believes Ms. Robey is "clearly biased." Similarly, it unclear how simply offering a terminated employee severance and not contesting her claim for unemployment benefits many years ago makes Ms. Asani "clearly biased." Defendants respectfully ask the Court to decline Plaintiff's invitation to make these designations wholesale and, instead, permit Plaintiff to call them as adverse witnesses only after being put through the burden of establishing such a need on a case-by-case basis.

### III. CONCLUSION

For the foregoing reasons, the Court should deny all four of Plaintiff's Motions *in Limine*.

Respectfully submitted,

Dated:  June 24, 2015

**STEPHEN P. SCARING, ESQ.**
*Attorney for All Defendants.*

By:  _____/s/_____
       Stephen P. Scaring, Esq.

Stephen P. Scaring, Esq.
666 Old Country Road
Garden City, NY 11530
T: 516-683-8500

**PEPPER HAMILTON LLP**
*Attorneys for All Defendants*

By:  _____/s/_____
       Sean P. McDevitt, Esq.
       Albert L. Barrueco, Esq.

The New York Times Building
620 Eighth Avenue, 37th Floor
New York, New York 10018
T: (212) 808-2700
E: *McDevittS@pepperlaw.com*
E: *BarruecoA@pepperlaw.com*